is number 24 10047 United States v. Hernandez. Council, I'm Daniel Tibbett on behalf of Elizabeth Hernandez. Ms. Hernandez is in prison serving a 20 year sentence for Medicare fraud. I just want to briefly acknowledge that she has family members and supporters in court today. My intention is to try to address orally issues one, three and four that were raised in the briefing. Obviously, I have limited time. So if the court wants to direct me, I'm happy to do that. You're the ones who will be deciding the case. The first issue and what I think is perhaps the most striking error in this case that would be the most apparent to just a lay person wandering into court off the street was the clear departure from judicial neutrality with the trial judge giving the government 40 minutes to close and the defense 30 minutes to close. A 33 percent difference in this highly contested seven day trial. Would it be a violation of judicial neutrality if it were flipped? It would, although I'm not sure what remedy there would be in that situation, but it's a contingent cross appeal for where where a guilty verdict still comes in. The government does. If you reverse, I'd like this is an unfairness that I'd like for you to remedy on on remand. Yes, I think it would be the same. I mean, the government doesn't have due process rights, though, right? So, I mean, right. But as far as whether it's disparate. Yeah, I don't think it's not a due process. It's not a constitutional violation in the same sense. I agree with that, Judge Brasher. But as far as whether it's disparate treatment, you know, I think both parties should be treated the same. What do we do? That's a let's just assume just to kind of cut a little bit. Let's just assume that I think that this is a problem. I think it's subject to at least harmless error review. Well, how do we assess whether this error is harmless? Could you talk about that a little bit? Sure, Judge. I think that, you know, generally the way that you assess whether the error is harmless, of course, is whether you can, you know, remain confident as a judicial body that, you know, may retain confidence in the result that it would have been the same but for the error. So you look at what actually happens in the closings. What actually happened in this case was defense counsel got up, gave her closing, was cut off by the judge in the middle of closing, you know, in front of the jury. Doesn't look good. And begs the judge for, you know, please, may I have 10 more minutes? No. Sit down. And just has to stop in the middle of argument. And there are specific, you know, it would also potentially in some cases, maybe there could be harmless error found if, OK, well, that looks bad. But listen, the defense got to argue everything that, you know, reasonably could have been argued in the case. The jury heard all this, heard everything. So, you know, we're not going to reverse the whole trial. However, what do we do in multi-defendant cases? So where you have the prosecution gets two hours, for example, and you have six defendants at the other table each given, let's say, 30 minutes. That's clearly disparate time between what the government has and what each individual defendant has, correct? Well, basic math, that would be three versus two hours, yes. Well, but you're totaling it. But remember, like each individual defendant is judged on their own, right? So you have a government with two hours and you have a defendant only has 30 minutes. Oh, I see what you're saying. Is that disparate? Well, I mean, I think if they... No, I don't think that is, because if the defendants felt that they had some kind of adverse defenses or individual defenses that, you know, couldn't be adequately, you know, in a joint trial, presumably you're working together, generally. Not, as you know, not always.  But in that situation, though, doesn't the government have to address each? The government has to prove that each individual defendant is guilty. So presumably the government has to use its time. Right. I think... Divided across the defendant. That would be the theory, Judge Brasher. But so in other words, I just want to be clear that what that means is you can do disparate between defendant and government. There just has to be a reason for it, right? I mean, I guess so, Judge. I mean, that's the implication of the question of the answer you just gave the Judge Brasher, which is, yes, it can be in that case. There's a reason for it, because the government has to do more than each defendant has to do. And that's true. Does that mean that an evaluation of a case by a judge to say, in this case, I think the government has more to do than the defendant does is a sufficient basis in which to give disparate time? No, I don't think it... And how would it be OK? Has it OK in one and not the other? Because we've approved the first. I just I'm I'm having trouble distinguishing between situation one and situation two. Well, in situation one is I'm not familiar with the case that, Judge Luck, that you're referring to. So, you know, I'll... Assume with me we've approved... I do assume it. I'm saying, deferring to that, in your... In that example, you're saying that the defense was given a total of three hours, right, for all six defendants. That's what I'm saying. Versus two hours for the government. If it had been the reverse and the defense had been given two hours total between all six versus three hours for the government, I think defense counsel would be here making the same argument. I guess. But but each individual defendant is the one who objected. In other words, it's not a collective objection. It's a, hey, I only have 30 minutes and the government gets to be up here for two hours. I need more time. And what we said, what the district court said is this is enough for each defendant. The government has more to do. And we approve that. We said that was not an abuse of discretion. I just I'm having trouble assuming. Don't I'm not asking you to say that that is the law, but assume with me that is the law. How is that different from a situation where an evaluation of a case, a district judge says in this particular case, because the defense didn't put on any defense, they didn't cross-examine that much. The defense is limited to just a good faith issue. It isn't a fact fight. The defense just has less to do here than the government does. And so I think the government needs slightly more time. If that happens, is that a due process violation of judicial neutrality must be reversed no matter what? Candidly, I don't know, and I don't think I have to know or the court has to know the answer to that hypothetical to answer this question. The rule that I'm arguing for is in a case where the judge specifically says the reason that I am giving this, the reason I'm doing this disparate treatment is because the government has the burden of proof, something that applies in every criminal case. And so therefore, to make up for the fact that the government has to prove the case beyond a reasonable doubt, I'm going to give them more time. That is an abuse of discretion because that is disparate treatment without any, you know, rational basis. I want to ask about the harmless error point that Judge Brasher asked you about. So as I understand it, this was not a fact fight. Sometimes some cases are just the government says this happened. The defense says none of that happened. That's not really what I understand the defense to have been here, that she doesn't really dispute that her signature was on these documents, that she reviewed these documents, that all that it was her IP address for the most part, that none of that really is disputed. What is disputed is I thought I was told by these folks that this was all legit. And so when I signed it, I thought that they had seen a doctor and they had done the things they were supposed to do. That's a that's an intent fight. And so it seems to me that most of that discussion came out in the 30 minutes that that Miss Puglisi did a very good job of presenting that very issue to the jury. What more intent wise was there to do than what she actually did? I've read the entire closing. What more would she have done? So I would focus on three things that could have been done, which were which were told to judge more at the time. The first was arguing about the statement, the inculpatory statement that the government seized from her home. And which on its face was a devastating piece of evidence for the defense. It basically said, you know, I was deliberately ignorant, meaning that I didn't have good faith, which is the entire defense. The defense had to, you know, therefore explain that piece of evidence to the jury. They got they didn't do it. They didn't have time to do it. Number two, going to, you know, the court's point about what her intent was. A major government witness was Joanna Ledesma. Ms. Ledesma worked with Ms. Hernandez, signing these prescriptions, was also charged and cooperated. And Ms. Ledesma testified as a government witness and testified that she herself did not think that they were doing anything wrong. She thought that this was a permissible practice. There was a lot of evidence in the case. And I know the courts read everything. But just briefly that, you know, multiple, more culpable people orchestrating these scheme, these schemes, running these companies, they would get prescribers like Ms. Hernandez, who were basically interchangeable, a warm body who could, who had a, you know, who had a license to sign and, you know, who profited much more. There was significant evidence, including from those witnesses and from Ms. Ledesma, that what the prescribers were given was documents that indicated that these patients had already been seen by a doctor, that indicated that all that, you know, needed was a was needed was a review. The defense was not able to talk about Ms. Ledesma's testimony at all, specifically her testimony that she didn't think that she was doing anything wrong, which is exactly what the defense was. And the third thing was actually tying everything into the legal defense in the case of good faith. Now, I agree, Judge Luck, that the defense talked about, you know, her intent, her state of mind, of course, in the in the time that they were allotted, that was, you know, that was the defense. But they didn't do the final step that logically would have been done towards the end of the closing argument of, okay, these are the facts, now this is what the, this is what the law is that the judge is about to explain to you about good faith. And, you know, the government has to prove it. And, you know, you, even if you think this was wrong, etc., if you look at her, you know, mental state, if you're not convinced beyond a reasonable doubt, you have to acquit. The defense didn't get to make that argument. So that's why I don't think the error was harmful, harmless. And, you know, very brief or... On the harmless error, I just have one quick question. I know you want to move on to something else.  But I think you make a good case that there is more that could have been talked about. Is that dispositive to harmless error? Or for harmless error, do we have to look at whether she would have been found guilty anyway? You have to... And particularly that statement, I just worry, you know, that statement seems so damning. The, you know, I forget the, you know, the written statement. It seems hard to say that an extra 10 minutes would have changed the result. Well, I think that the issue with that statement, Judge, is that the... And this ties into another point that I'll try and talk about in, you know, 30 seconds. That that statement was dictated... According to... That statement came up at a motion of limine. Ms. Hernandez testified about it. She testified that there was a proper meeting coming up with the government. She was on the phone with an attorney. The attorney was telling her, listen, this is what you've got to say to get favorable treatment from the government. She didn't want to do it. The attorney yelled at her and told her, you've got to do this. This is what you've got to do. Okay, and she wrote it down. And it's sitting at her desk in her home. She wrote it down. Then they had the proper meeting, and she didn't share the statement with the government. At the time that it would have helped her because she testified, it wasn't true. And she didn't want to lie. She was just parroting what the attorney told her. But she was able to get in the fact that the attorney wrote it, right? She was able to get in the fact the attorney wrote it. And that wasn't her current attorney. Well, actually, I'm sorry. The attorney didn't write it. She wrote it. But she was dictating it. The attorney dictated it, right. And that it wasn't the current attorney. And that wasn't the current attorney. The two critical facts that she wasn't able to get into was that it wasn't true and that she didn't ever. Did the defense counsel proffer the completeness, in other words, what they wanted to put in for those things that you're talking about now? As I read the transcript of this part, what defense counsel told the judges, we want to present the complete transcript for this purpose. And the purpose was the one that Judge Pryor just asked you about, which is to show that these attorneys were the ones who had dictated it. It was her prior attorney. And that's exactly what ultimately was stipulated to, which they said was fine. How now can we look at something else that was supposed to be proffered when the district court wasn't told that that was the purpose for which it needed to be proffered? Well, I think if it had, I candidly don't. Yeah, I think the court's right that they didn't specifically. Look, ultimately, at the end of the day, the child defense attorneys, unfortunately for me, said that's fine. So if the court was going to reverse on this error, it would have to reverse on plain error. There wasn't preservation. Or invited error. OK. And so I think when you're looking at that, you have to look at the rule of completeness, what could have come in, what didn't come in, and what difference it would have made, and whether that standard was met. But just to briefly return to the question that Judge Brasher had about, oh, well, or maybe it was Judge Pryor, sorry, about what the statement was so damning. I think when you're looking at harmless error, you have to consider what this transcript shows. She never gave that statement to the government. She gave an explanation for it. So I do not think that the clear disparate treatment in this case is harmless. I think the court should tell lower court judges clearly, to avoid this recurring, that, you know, you can't do this unless there's some basis for it, like Judge Lux suggested. And here, some valid basis. And here there wasn't. So we would ask the court to reverse and remand. May it please the court. Jeremy Sanders on behalf of the government. Your honors, Elizabeth Hernandez played a critical role in a massive scheme to defraud Medicare of over $100 million. For her conduct, she was convicted of multiple fraud and false statement charges. There was no reversible error in her trial or her calculation of her advisory guideline sentence. We ask this court to affirm. Now, I'm happy to discuss any of the issues, but I will start with the allocation of the argument time, which my friend on the other side started with as well. I want to initially point out that at the outset of the defense counsel giving her oral argument, she was fully aware of the time limitation that had been placed on her, which was 30 minutes. She chose to allocate her time as she did. And she, I think the most important thing that we want to make and that we set forth in our brief is that we agree with you, Judge Lux, this was a case about good faith. This was, that was the crux of the defense here. Before we get there, is it okay for a district court, because the government bears the burden of proof and has to do the rebuttal close, to always, in every case, give more time to the government than to the defense? I don't think in every case it would be required. I think that those are rational. I mean, just answer this hypothetical, I mean, which just follows up on Judge Lux's question. I mean, what if a district court, by local rule, said, in this district, a closing argument time will be divided as follows. The government will get twice as much time as the defendant in a criminal case to divide as the government sees fit between its first and its second close. Would that be, would that be within the discretion of a district court to adopt by local rule? I think it would be ultimately within the discretion. Yet, I believe there would be cases at the margins where that would be problematic, given the length of... How would that be within the district court's discretion to say, just as a matter of local rule, the government always gets twice as long? Well, because I think the district courts have long been granted discretion in determining how to apportion closing argument time. Right, but that's case-by-case discretion, not arbitrary rule discretion. In other words, that's not an evaluation of every single case, because there's some cases, unlike this one, I think, where everything is contested, every fact is contested. And in that case, and where the defense puts on a longer case than the government. I've had cases where there were 10 defense witnesses and four government witnesses. The defense, in other words, did way more than the government did to prove whatever affirmative case it was. In that case, wouldn't the defense need more time than the government? How would that rule not be arbitrary in that particular case? Well, I think it may be arbitrary in that particular case, but as a set forth rule, and say the local rules or something, it's not arbitrary. It's not irrational, because the government does have the burden of proof in all cases. And the government does have to divide its time between two jury addresses, both the initial summation and the rebuttal. So I think it's not irrational. But I do agree with you that there could be sort of as applied challenges, that in this particular case, given the defenses that I had to deal with, the amount of time that I need needs to be more. I know you're an out-of-town lawyer. You're not someone who practices down here consistently, but do you know from your conversations with those in the U.S. Attorney's Office down here, if this district judge is doing this consistently? I don't believe it's reflected in the record, but I do understand that, yes, this is Judge Moore's practice. There is some discussion in the record where he says to my colleagues who are also from the criminal division of the Department of Justice, not local AUSAs, do you know how I do things around here? And he allocates 10 minutes, or at least in this case, his practice was to allocate 10 minutes per day of trial testimony. And the prosecutor mentioned that she had been very expeditious in getting through the evidence, so she'd like an hour instead of the 40 minutes, and he denied that extension for her. Yeah, I gathered that to be a discussion about just like the overall length of time because the—I forget how much time the government asked for, but— An hour. Yeah, so, and then he was sort of like, you're never going to get an hour. Yeah, I thought Judge Lux's question was more about— Disparate treatment. Yeah, I mean, is this a thing that the Southern District of Florida does where it's just like, is it effectively a local rule where it's just like, look, in this district, the government gets more time than the defendants do? I do not believe it is district-wide practice. Is this a judge-specific rule? I can't speak with any certainty, but I have heard anecdotally that that does happen on occasion. I think, the way I encapsulate what my friend on the other side is presenting is sort of two interrelated arguments, the first being the disparate treatment between the two, and I think that's easily addressed, as Judge Lux pointed out, in those cases where there are multiple defendants, in— Yeah, but in those cases, though, I guess the problem is that when—the question here, clearly it's an abuse of discretion analysis, right? And when the district court says, look, I've got a situation in front of me, I've got to figure out what to do, you know, you've got three defendants, maybe two of them are represented by the same lawyer, one is his own lawyer, and then the government—you know, there's got to be some play in the joints for district courts in that situation to figure out how to allocate time. I guess the concern I'm seeing here is that that situation is not here. The district court doesn't really seem to be exercising discretion just saying that, like, I just think the government gets more time because I just think the government gets more time. I just prefer the government to have more time. Well, I don't know that it's a preference. I think the way the district court based its ruling was based on the fact that the government had to shoulder the burden, had to go through all the abuse, all the charges. Which is the case—which goes back to the local rule question. That seems like basically adopting a rule that says in every criminal case, the government's obviously going to have the burden in every criminal case. So I'm exercising my discretion in every criminal case to just give the government more time just because of the fact it's a criminal case. And isn't—I guess if that's the rule, why isn't that an abuse of discretion? Because baked into that rule is the idea that I favor the government over the defense. Well, I don't think it's any more favorable to the government over the defense than it is the natural notion that the defendant—excuse me, that the government gets the last word and gets two closing summations. So there are, as my friend on the other side would use the word inequities, I would say just differentiations between the presentation of a closing argument. But I don't want to lose sight of the fact that we have also made a harmlessness argument here. So your opposing counsel, when I sort of pressed him, gave two examples, and I think there are some others that are listed in the brief, of what would have happened. So one is, I would have addressed the letter more directly than I was able to. I would have talked about Ms. Ledesma's testimony was the main cooperator, and she was a critical witness in the case and specifically sort of highlighted those portions. And the third thing he said is, I would have tied it to the instruction, which was very helpful to me. There's a separate issue regarding that, but that instruction was very helpful to me, and that was sort of the main part of my defense. Why are those things not—does that not create at least some doubt on a harmless error standard? If this is constitutional error, then under Chapman, you have the burden to prove substantially that there was no effect on the verdict. So how would those things not have affected the outcome? Well, I think I will stand up for my friend on the other side, where most of these cases that we have seen have been decided on the fact that, well, there's been no prejudice shown because we don't know what you would have talked about. Here, Your Honor is correct, the trial counsel gave a very distinct proffer. But I think the ultimate point is that good faith was the essence of this entire defense, and she was able to adequately cover that. She talked about how her client made mistakes, but it wasn't fraud. She talked about how she took directions from other people. She talked about how she reasonably believed that these patients had been seen by others. She talked about how no one told her to commit fraud and how others made their businesses appear to be legitimate so that she would have believed that they were. Those all bake in the fact that she wasn't able to wrap it into the good faith instruction, I think, is ultimately immaterial. I don't think it would have moved the needle any to have talked about those additional aspects that she did because, quite frankly, the evidence here was overwhelming. The defendant billed for more genetic tests from more Medicare beneficiaries than any other provider in the country, and there were several days where she submitted claims for telehealth appointments for more than 24 hours in one day. That's just not simply possible. The jury had that information before them. They had her text messages with Ledesma that say to just BS it, to just fake it. Those are damning, and of course her statement that was admitted into evidence as well. Those are damning pieces of evidence that just weren't going to be overcome by any additional 10 minutes in closing argument, I don't think. I'll talk briefly about the good faith instruction. I know that wasn't addressed in my opponent's presentation, but I will just simply say that obviously we concede that the error was erroneous and that it was plain, but we don't think it affected her substantial rights and requires reversal for a couple of reasons. The first is, and this is at DE 135.21, the written instructions that were given to the jurors and that were posted up on the screen that they could follow along with were undoubtedly correct. Second, no one noticed the error, which leads to the conclusion that there absolutely wasn't any confusion going on about who bared the burden. And third, all of the remaining instructions on the burden generally and willfully. I know some circuits have looked to that fact, but I have to say that that seems odd to me. That's always going to be the case in plain error, right? That no one noticed. The concept of plain error is there's no objection and it sort of went along, even though it was plainly erroneous at the time. So it's hard to sort of treat that fact as contrary to anyone else. Was there any indication, this may not be in the record and I'm just asking, was there any indication that it actually wasn't read incorrectly and this is just a transcription error and we wanted this and there was a movement or some thought to asking the court reporter to change the transcription? I mean... We made such a motion both in the district court, that motion was denied. We asked the court reporter to check our transcripts, to check the recording rather. We then asked to produce the recording and that motion was denied. Oh, so you've made an effort to check the recording, but no one has checked the recording? The court reporter claims that she checked the recording and that it was accurate. We asked for the production of the recording, the district court denied that motion. We asked the appeal to be held in advance and this court denied that motion as well. There are no further questions. I'm happy to address any other subject, but if there are no further questions, we ask this court to affirm the judgment and conviction. Thank you. Okay, just briefly on the points my colleague made most recently about the good faith instruction, I would just say there's... He said it was printed, the written instructions were displayed on the screen in the courtroom. There was nothing in the record that indicates that, that I'm aware of, and so I just want to point that out. As to the court's logical question about was this just a mistake by the court reporter, the court reporter specifically told us when the government, you know, the government saw my brief and I think probably thought the same thing. Maybe they just missed a knot in the transcript. Counsel, docket entry 149 at pages 107 and 108 doesn't indicate that the judge is also going to place them on the screen. Well, if the court has that, I guess I'm wrong. I don't remember anything that said that in the... I'll double check that, counsel.  Yeah, but the court reporter did say that the written instructions, or the transcript was correct when she checked the audio. Just to return to... Sorry, this is at page 107 of the docket entry I mentioned, this is at the beginning of the reading. Court says, okay, ladies and gentlemen, so I'm going to read these instructions. You have them on display if you want to follow along, but I will send them back a copy of these instructions along with the verdict form and a copy of the indictment for use in deliberations. Okay. Well, then I'm wrong and you're right. It was displayed on the screen. Regardless, you know, the written instructions, I'm sorry, the oral instructions to the jury, which is what they're told to follow, were incorrect. On, you know, as the court has... Every judge on this court has clearly recognized correctly, you know, was the entire issue in the case. To return to the other, the first issue, you know, I guess what I would try to leave the court with is that we've had, you know, 250 years of criminal jury trials in this country where people have the right to appeal and, you know, defense attorneys like myself make arguments that, you know, they think are going to help their clients. There is not a single case in those 250 years where these facts have been presented, where the judge has said... Mr. Tibbitt, I'm going to ask the same question I asked your opposing counsel. You're an experienced lawyer here in town. Do you know if this is going on regularly? Do you know if this is an issue that's come up and has been appealed a number of times or that... I don't. I don't know if it's been appealed and I'm not a trial lawyer that's, you know, dealing with the trials, but I know it happened in this case and it seemed to be a pretty, pretty, you know, he did... The judge did it on his own without anybody asking for it. It seemed to be kind of a reflex of what he would do, but, you know, ultimately, I think the court has, not just for one judge or one district, but, you know, what the... As the Supreme Court says in Marshall v. Jericho, this is not just about one case. It's about the longevity of this system that, you know, all of us attorneys in this courtroom, the judges have a responsibility to uphold, and that requires public confidence. And that requires, listen, one side gets up, makes their argument, other side gets up, makes their argument, jury decides, everybody's treated equal by the judge. The judge is neutral. What could be more, obviously, not neutral than giving one side, you know, 40 minutes because... And the other 30. So that's an error. It's striking and the court should reverse. On that and the other bases that we put in the brief. Thank you. Thank you, counsel.